# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT

I, Special Agent John Lapati, your Affiant, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I am a Special Agent of the Department of Homeland Security, United States Secret Service (USSS) and am an investigator or law enforcement officer within the meaning of 18 U.S.C. § 2510 (7): that is, an officer of the United States Government empowered by law to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. § 3056.  I have been employed by the U.S. Secret Service (USSS) since August, 2003.  Currently, I am assigned to the USSS Baltimore Field Office where I am the financial fraud group leader, responsible for investigating felony level bank fraud, check fraud, wire fraud, identity theft and electronic crimes that affect this nation's financial institutions.

2.      I have served as a Special Agent with the USSS at the USSS's Newark Field Office (2004-2009), USSS's Special Operations Division (2009-2015), and am currently assigned to the USSS's Baltimore Field Office. I successfully completed the Criminal Investigator Training Program at the Federal Law Enforcement Training Center (FLETC), Glynco, GA and the United States Secret Service Special Agent Training Course at James J. Rowley Training Center, Laurel, MD. I have completed numerous advanced investigative training programs, to include money laundering, network intrusions, counterfeit credit cards and counterfeit currency. Additionally, I have completed the Basic Computer Evidence Recovery Training course (BCERT) at FLETC and am certified to conduct forensic examinations of electronic media, such as computers and other electronic storage devices. I am current member of the Maryland Electronic Crimes Task Force

(MECTF) and work closely with other federal, state and local law enforcement investigating cyber-crime. During my tenure with the USSS, I have conducted numerous criminal investigations including counterfeit credit cards, skimming, counterfeit currency, bank fraud, wire fraud, identity theft and other violations of the United States Code. I have applied complex investigative techniques in the determination of federal violations, prepared search warrants, arrest warrants, written reports and collected and preserved evidence in furtherance of these investigations.

3.      This Affidavit is made in support of an application for a warrant, pursuant to Rule 41 of the Federal Rules of Criminal Procedure, to search an iPhone XR, black in color (International Mobile Equipment Identity: 353056100464879), as described in attachment A, to seize the records listed in Attachment B.

4.      The statements contained in this affidavit are based on my personal knowledge or from information that I have learned in the course of my investigation, including information from financial institutions, witnesses, and others participating in the investigation.  Since this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation.

**STATEMENT OF PROBABLE CAUSE**

5.      On September 4, 2019, Detective (Det.) Kropff of the Laurel Police Department (LPD), Laurel Maryland, provided your Affiant with details of an investigation regarding a Jason Evans, who was identified as a suspect in a fraud attempt reported to Det. Kropff's office on August 6, 2019.  On the same date, Officer Hayden of the LPD responded to conduct interviews at Capital One Bank located at 1025 Washington Boulevard, Laurel, MD.

6.      Officer Hayden met with Capital One Branch Manager, Franklin Djisam, who advised an individual "JM," later identified as Jason Evans, came into the bank requesting a cash

advance in the amount of $14,400.00 from a Capital One Spark Business Visa Card, account ending 2349. Capital One's Bank policy states identification must be presented at the time a card is used. Mr. Evans provided a Pennsylvania Driver's License bearing the name "JM", a date of birth in the year 1979 and license number ending 170. In addition, the subject presented a Capital One Spark Business Visa Card bearing the name "JM" upon the front, and account number ending 2349. This card was presented to be used for a cash advance. Mr. Djisam attested that the transaction was being processed until the bank's computer system began having technical difficulties, delaying the transaction. Mr. Evans was instructed to wait until the system computer's reboot but Mr. Evans left without explanation, leaving behind the Pennsylvania Driver's License and Capital One Bank Card. Mr, Djisam said he was contacted subsequently by Capital One Card Services, which advised that the transaction was not approved due to the card being fraudulent.

7.      Det. Kropff investigated the account used in the attempted transaction. According to Capital One, the account ending 2349 was opened online on June 29, 2019. The identifiers used to open the account included the full name of "JM," JM's date of birth in the year 1947 and his social security number ending 7832.

8.      Det. Kropff further investigated the bank surveillance footage as well as background checks utilizing law enforcement databases and a motor vehicle administration query based upon the information provided on the Pennsylvania Driver's License. The investigative searches of JM initially yielded no results; however, further extensive investigation of the social security number used to open the account revealed an individual with those identifiers currently residing in Guam. The name, exact date of birth and exact social security number of JM were used in the opening of Capital One account ending 2349. Det. Kropff

3

contacted JM in Guam and confirmed his identity via phone and JM stated he has never been to Maryland nor has a Capital One Bank Account. JM also confirmed that he does not know Mr. Evans and did not authorize anyone to use his information.

9.     Surveillance footage was processed through numerous law enforcement databases and open source websites, and a subject by the name Jason Evans matched the suspect in Capital One Bank. Facial features and physical features of Mr. Evans are extremely similar to the features of the subject conducting the transaction on August 6, 2019.

10.     Further, when a law enforcement alert was issued to try to identify the individual, Det. Sillaman of the Anne Arundel Police Department, Anne Arundel County, Maryland contacted Det. Kropff and advised that he recognized the suspect as Jason Christian Evans from a previous fraud investigation. Det. Sillaman further reported that on July 30, 2019, Mr. Evans obtained $14,400.00 from the Capital One Business Spark Card ending 2349 at the Capital One Bank located at 7937 Ritchie Highway, Glen Burnie, Maryland. Surveillance footage and investigation also confirmed Mr. Evans was responsible for this transaction.

11.     In addition, investigators learned that on July 31, 2019, charges were made on the Capital One Business Spark Card ending 2349 at the Apple Annapolis store located at 1735 Annapolis Mall, Annapolis, Maryland. Upon further investigation, surveillance footage revealed Mr. Evans was responsible for this transaction as well as others. In several of the surveillance videos Mr. Evans was wearing a distinctive green t-shirt with distinct markings.

12.     On August 23, 2019, Anne Arundel Police obtained a state search warrant, which was signed by the Honorable Ronald Silkworth of the Circuit Court of Anne Arundel County. The warrant authorized the search of Mr. Evans's residence and automobile and was executed on August 26, 2019. Located in the residence was a card reader/writer, a credit card embosser, a

computer, four additional fake identifications bearing Mr. Evans's picture but the PII of other individuals, opened and unopened mail addressed to other individuals (sometimes at other addresses), tax and social security documents for other people, mortgage documents belonging to other people, numerous credit cards (many counterfeit), a cell phone and the distinctive green shirt that Mr. Evans was seen wearing in various surveillance videos.  There was also a business card for Absolute Home Mortgage Corp., Jason Evans, Account Executive.  Located in the automobile was a second credit card embosser as well as a counterfeit social security number card with the name from one of the counterfeit identifications.

13.     Subsequently separate search warrants were obtained for the telephone and laptop, which were then searched forensically.  Among the items recovered were credit card dumps, instant messages about purchases of credit card dumps, scripts and other information about "scrambling" credit card numbers (generating numbers using an algorithm).

14.     Capital One Bank is insured by the Federal Deposit Insurance Corporation and is headquartered in Virginia.

15.     On December 11, 2019, S.A. Schlager obtained a criminal complaint, which was signed by the Honorable Beth P. Gesner, Chief U.S. Magistrate Judge for the District of Maryland. An arrest warrant was also issued.  On the same day, Mr. Evans was arrested as he arrived for his initial appearance with regard to a petition alleging violations of his supervised release, based upon the drug charges stemming from the August 26, 2019 search warrant. During the search incident to arrest, an Apple iPhone XR black in color (International Mobile Equipment Identity: 353056100464879) (as described in Attachment A) was discovered and seized by law enforcement. Other items of no evidentiary value were surrendered to his newly appointed criminal counsel.

16.     This iPhone potentially has substantial evidentiary value.  First, it may match phones that Mr. Evans has been using when he was captured on surveillance footage.  In addition, based upon my knowledge and experience, individuals engaged in fraud and identity theft often have stored on their cell-phones information germane to the investigation, such as incriminating text messages and emails, the telephone numbers of co-conspirators and suppliers, and photographs which incriminate themselves or others in the crime.  Indeed, the previous digital forensic exam on the cell phone seized from Evans on August 26, 2019, provided information and documents relevant to the investigation.

## CONCLUSION

17.     Based upon the foregoing facts and upon Affiant's training and experience, there is probable cause to believe that Mr. Evans has engaged in bank fraud in violation of Title 18 U.S.C. § 1344; fraud in connection with the identification documents in violation of Title 18 U.S.C. § 1028(a)(3); social security number fraud in violation of Title 42 U.S.C. § 408(a)(7); and aggravated identity theft in violation of Title 18 U.S.C. § 1028A.  This court has already determined that probable cause existes to charge Mr. Evans with these crimes in a criminal complaint.

[INTENTIONALLY LEFT BLANK]

19 - 4 0 6 6 BPG

18.     Likewise, there is probable cause to believe that the cell phone seized from Mr.

Evans on December 11, 2019 contains information and documents relevant to the criminal

investigation.  Therefore, your Affiant respectfully requests the issuance of a seizure warrant

authorizing the forensic search of the iPhone XR, black in color (International Mobile Equipment

Identity: 353056100464879), seized from Mr. Evans incident to his arrest on December 11,

2019.

Respectfully submitted,

_____
John Kapati, Special Agent
United States Secret Service

Subscribed and sworn to before me by said Affiant on this the /3TH day of December, 2019.

_____
Honorable Beth P. Gesner
Chief United States Magistrate Judge
District of Maryland

7

## ATTACHMENT A          19 - 4 0 6 6 BPG

### PROPERTY TO BE SEARCHED

The following piece of property currently in the custody of the United States Secret Service, Baltimore Field Office:

- An iPhone XR, black in color (International Mobile Equipment Identity: 353056100464879).

**ATTACHMENT B**                 19 - 4 0 6 6 BPG

### ITEMS TO BE SEIZED

The device described in Attachment A may be searched for the following items, which may be seized:

All records, documents, messages, correspondence, data, and materials that may constitute fruits or instrumentalities of, or contain evidence related to bank fraud, in violation of Title 18 U.S.C. § 1344; fraud in connection with the identification documents, in violation of Title 18 U.S.C. § 1028(a)(3); social security number fraud, in violation of Title 42 U.S.C. § 408(a)(7); and aggravated identity theft, in violation of Title 18 U.S.C. § 1028A, including, but not limited to, the following:

1. All records concerning device-making equipment, such as magnetic stripe encoding machines, embossers, and card readers and writers;

2. All records concerning cards with magnetic stripes, including debit and credit cards, and/or counterfeit debit and credit cards;

3. All records concerning bank account numbers, debit and/or credit card numbers, personal identification numbers, and other access devices;

4. Any records containing personal identifying information of potential victims, including, but not limited to, names, dates of birth, social security numbers, social security number cards, bank account statements, credit card statements, and checks;

5. All records concerning identification documents, such as birth certificates, Social Security number cards, driver's licenses, voter registration cards, passports, and applications for such identification documents;

6. All financial documents, such as bank account records and statements, IRS forms, and state tax records;

7. All records concerning travel, including location records of the device described in Attachment A;

8. All records regarding methods to engage in criminal conduct or avoid detection by law enforcement;

9. All records regarding who used, owned, or controlled the device described in Attachment A at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence; and

10. All records, including contact logs, address books, telephone books, notes reflecting telephone numbers, photographs, or directories that may identify the names of participants in the fraud scheme described in the Affidavit.

As used above, the terms "records, documents, messages, correspondence, data, and materials" includes records, documents, messages, correspondence, data, and materials created,

modified, or stored in any form, including electronic or digital form, and by whatever means they may have been created and/or stored.

With respect to the search of the device described in Attachment A, the search procedure may include the following techniques (the following is a non-exclusive list, and the government may use other procedures that, like those listed below, minimize the review of information not within the list of items to be seized as set forth herein, while permitting government examination of all the data necessary to determine whether that data falls within the items to be seized):

a. surveying various file "directories" and the individual files they contain (analogous to looking at the outside of a file cabinet for markings it contains and opening a drawer believed to contain pertinent files);

b. "opening" or cursorily reading the first few "pages" of such files in order to determine their precise contents;

c. "scanning" storage areas to discover and possible recover recently deleted files;

d. "scanning" storage areas for deliberately hidden files; or

e. performing key word searches or other search and retrieval searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are intimately related to the subject matter of the investigation.

If after performing these procedures, the directories, files or storage areas do not reveal evidence of theft of government property or other criminal activity, the further search of that particular directory, file or storage area, shall cease.